

1

2

3          UNITED STATES BANKRUPTCY COURT

4        EASTERN DISTRICT OF CALIFORNIA

5           SACRAMENTO DIVISION



F I L E D

JUN 2 7 2005

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

6

7

8  In re                        )   Case No. 05-20490-A-7
                                )
9                               )
   SOLVESON CRANE COMPANY, INC.,)   Docket Control No. SF-4
10                              )
                                )   Date: June 13 & 14, 2005
11        Debtor.               )   Time: 9:00 a.m.
                                )
12  _____)

13        **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

14        On June 13 and 14, 2005, the court conducted a hearing on

15 the trustee's Motion to Sell Substantially All Personal Property

16 of Debtor Free and Clear of Liens (the "Sale Motion").   The

17 trustee, Lawrence Gray, appeared personally and through his

18 counsel, Suntag & Feuerstein, Abram Feuerstein appearing.   The

19 debtor appeared through its principals and through its counsel,

20 Steven S. Altman specially appearing.  Bigge Crane & Rigging Co.

21 ("Bigge") appeared through its principals and through its

22 counsel, St. James Law, P.C., Michael St. James appearing.

23 Stephen Passy & Associates, Inc. ("Passy"), appeared through its

24 principal and through its counsel, Labowe, Labowe & Hoffman, LLP,

25 Richard W. Labowe appearing.  Ritchie Bros. Auctioneers, Inc.

26 ("Ritchie Bros.") appeared through its representatives and

27 through its counsel, McDonough, Holland & Allen PC, Mary Olden

28 appearing.  General Electric Capital Company and GE Commercial


322

1  Distribution Finance Corporation (collectively, "GECD") appeared
2  through their counsel, Stein & Lubin LLP, Dennis D. Miller
3  appearing.  CitiCapital Commercial Corporation ("CitiCapital")
4  appeared through its counsel, Efremsky & Nagel, Roger Efremsky
5  appearing.  Financial Federal Credit Inc. ("Financial Federal"
6  and, collectively with CitiCapital and GECD, the "Moving
7  Creditors") appeared through its counsel, Hauser & Mouzes,
8  Raymond Policar appearing.  Other appearances were as noted in
9  the record.

10      Upon consideration of the papers and pleadings filed herein,
11  the offers of proof presented at the hearing and accepted by the
12  parties and the court, as well as the argument of counsel, and
13  good cause therefor appearing, the court enters the following
14  findings of fact and conclusions of law:

15

16                  Findings of Fact

17      1.    On January 14, 2005, Solveson Crane Company, Inc. (the
18  "debtor") filed a voluntary petition for relief under chapter 11
19  of the Bankruptcy Code.  The debtor was engaged in the business
20  of renting cranes and providing related services to the
21  construction industry.

22      2.    On May 10, 2005, based on a motion brought by GECD, the
23  court converted the case to a case under chapter 7 of the
24  Bankruptcy Code and Lawrence Gray was appointed trustee.  In
25  connection with the conversion of the case, the court determined
26  1that the debtor had used the cash collateral of GECD and other
27  secured creditors without the consent of those creditors or court
28  authorization to use cash collateral."  This occurred even though

1 │ the debtor was twice warned by the court to not use cash
2 │ collateral without the requisite authority.  Further, the debtor
3 │ had borrowed money, approximately $500,000, out of the ordinary
4 │ course of business from an insider, Virginia Solveson, without
5 │ court authority.  Finally, during the period from the filing of
6 │ the petition to the date of conversion, the debtor had operated
7 │ at a loss.  The court concluded that the debtor was unlikely to
8 │ operate viably during the chapter 11 case.

9 │      3.   Following the conversion, the trustee requested
10 │ authorization to operate the business for a limited period of
11 │ time pursuant to 11 U.S.C. § 721, so as to preserve any going
12 │ concern value the business of the debtor might have and to
13 │ maximize the value of debtor's assets through an orderly
14 │ liquidation.

15 │      4.   The court authorized the trustee to operate the
16 │ debtor's business on an interim basis through May 23, 2005, and
17 │ thereafter, through an order entered on May 27, 2005, the court
18 │ extended the trustee's authorization to operate the business
19 │ through June 20, 2005.  In connection therewith, however, the
20 │ court ordered that the trustee would not be permitted to enter
21 │ into any new rental agreements or to extend any customer leases
22 │ that expired during the period of his operation.

23 │      5.   In an order entered on May 27, 2005, the court
24 │ authorized the trustee to use cash collateral in the operation of
25 │ the business, provided that he operated within an approved budget
26 │ and paid debt service to specific secured creditors.
27 │ ///
28 │ ///

-3-

6.    The trustee has advised the court that he is unable to sustain profitable business operations for any material period of time.

7.    The moving creditors filed motions for relief from the automatic stay to foreclose upon their collateral.  These motions were continued from May 23, 2005 to June 13, 2005.  As a result of "blanket liens" held by the moving creditors, almost all of the equipment owned by the debtor is collateral of the moving creditors and was the subject of their motions for relief from the automatic stay.  Were those motions granted, the trustee could not operate the debtor's business with the remaining assets of the estate.

8.    On June 3, 2005, the trustee received an offer from Passy to purchase substantially all of the assets of the estate (the "Passy offer") for a guaranteed amount of $5,000,000 (the "guaranteed payment"), an amount that approximated the debtor's estimated $4,850,000 secured debt, together with a possible payment associated with a future auction of the assets conducted by Passy.  The Passy offer excluded accounts receivable and avoidance actions which, were the Passy offer implemented, would be held by the estate free and clear of liens.  (The property that was the subject of the Passy offer is referred to hereinafter as the "property".)  The Passy offer also contemplated a $200,000 break-up fee (the "break-up fee").

9.    Immediately upon receiving the Passy offer, the trustee gave notice thereof to all creditors and parties of interest, setting his Sale Motion to accept the Passy Offer, subject to higher and better bids, for hearing on June 13, 2005 to coincide

1  with the hearing on the moving creditor's motions for relief from

2  the automatic stay.  The trustee filed an application for an

3  order shortening time with his Sale Motion.

4      10.  In connection with his application for an order

5  shortening time, the trustee represented to the court that the

6  moving creditors' motions for relief from the automatic stay had

7  been set for hearing on June 13, 2005.  Absent approval of the

8  Sale Motion at or about that hearing, the trustee correctly

9  perceived that there was a serious risk that the court would

10  grant the motions for relief from automatic stay and preclude him

11  from effecting an advantageous disposition of the debtor's

12  assets.

13      11.  Good cause existed to shorten the time for the hearing

14  on the Sale Motion:

15          a.  The trustee faced a material risk that the moving

16      creditor's motions for relief from the automatic stay would

17      be granted on June 13, 2005, virtually eliminating the

18      prospect of a recovery for unsecured creditors in the case.

19          b.  Under the Passy offer, the net cash estimated to

20      be recovered from the guaranteed payment by the trustee

21      after the satisfaction of secured debts amounted to only

22      about 3% of the total sale price, somewhat more than one

23      month's debt service payments.  The trustee faced the

24      material risk that if the estimated pay-offs were even

25      slightly low, the interest accruals pending the closing

26      could make it impossible to satisfy all of the secured debt

27      from the proceeds of sale, thereby imperiling the trustee's

28      ability to close a sale based on the Passy offer.

12.  On June 6, 2005, the court granted the trustee's application for an order shortening time respecting the Sale Motion.

13.  On June 3, 2005, the trustee gave notice of the Sale Motion to all creditors.  In addition, on that date the trustee gave notice of his intent to sell the assets free and clear of liens to creditors who had previously filed UCC-1s with respect to the debtor: The CIT Group / Equipment Financing, Inc; General Electric Capital Company; CitiCapital Commercial Corporation; GE Commercial Distribution Finance Corporation; Financial Federal Credit Inc.; NMHG Financial Services, Inc.; Crescent Machinery; Cupertino National Bank c/o Greater Bay Capital; Caterpillar Financial Services; Northland Financial; and TCF Leasing; and to Ford Motor Credit, Snyder Leasing and E.M. Tharp.

14.  The trustee diligently undertook to solicit overbidders for the property.  As a result of the trustee's efforts, and the notice of the Sale Motion he provided to the creditor base, Bigge and Ritchie Bros. each submitted overbids.

15.  At the hearing on June 13, 2005 the court overruled the objection to the Sale Motion presented by Virginia Solveson.  She urged that the sale should be deferred and the property marketed in some other fashion.  On the contrary, the court found that the debtor's business could not be operated profitably, that ongoing accrual of interest on secured debt would consume any possible monetary benefit derived from continuing the debtor's business, and exigent circumstances justified the trustee proceeding promptly to a sale of substantially all assets.  Subsequently, on June 16, 2005, Ms. Solveson withdrew her objection to the sale

1    motion, reserving her right to dispute the award of the break-up
2    fee to Passy.

3        16.  At the hearing on June 13, 2005 the court granted the
4    trustee's request for a one-day continuance of the hearing on the
5    Sale Motion in order to accommodate the trustee's need to conduct
6    an auction and Bigge's counsel's scheduling conflict.  The court
7    instructed the trustee to conduct an auction prior to the
8    continued hearing on the Sale Motion.

9        17.  The trustee conducted the auction commencing at 3:00
10   p.m. on June 13, 2005.  The auction was continued to June 14,
11   2005 from approximately 10:30 a.m. until approximately 1:05 p.m.
12   on June 14, 2005.  There was spirited bidding among Passy, Bigge,
13   and Ritchie Bros.

14       18.  At the continued hearing on the Sale Motion on June 14,
15   2005, the trustee announced that in his business judgment the $6
16   million bid presented by Bigge was the highest and best offer for
17   the assets, and recommended that the court confirm the sale to
18   Bigge.  Representatives of the other bidders were present in
19   court, and did not contest the trustee's recommendation.

20       19.  The fact that the trustee developed spirited bidding
21   and increased the sale price from $5 million to $6 million is
22   evidence that adequate notice was given and that the shortening
23   of time did not adversely affect the estate.

24       20.  The auction was conducted as a public auction with all
25   of the bidders presenting their bids in the presence of each
26   other and openly discussing the strengths and weaknesses of the
27   various bid packages.  Bigge did not offer or promise any
28   ///

-7-

consideration or inducement other than what was contained in its

public bids.

    21.  The moving creditors were present in court on June 14, 2005 and did not object to the sale.  CitiCapital and GECD had previously filed limited Objections to the Sale Motion based on the provisions for the release of liens and the payment of secured creditors contained in the Passy offer.  CitiCapital and GECD confirmed that those objections were resolved by the different structure of the Bigge offer.  The hearing on the moving creditors' motions for relief from the automatic stay was continued to July 11, 2005.

    22.  Bigge thereafter modified its purchase offer to conform to the results of the auction and to include additional provisions, acceptable to the trustee, respecting the mechanics of the sale (the "Revised Purchase Offer").  The Revised Purchase Offer dated June 16, 2005 is attached to the accompanying Order Approving Sale of Substantially All Assets.

    23.  In April, 2005, the debtor sold a 1999 Broderson 1C200 that constituted CitiCapital's collateral for $54,000 (the "sold unit").  Through inadvertence, the sold unit was identified as an asset subject to sale in the trustee's Sale Motion and thereby created an ambiguity concerning bids presented to the trustee on June 14, 2005, including Bigge's bid.  Under the circumstances and in light of the ambiguity created by the sold unit, the trustee believes it is appropriate to credit Bigge for the value of the sold unit as measured by the debtor's sale.  The sold unit is identified by the "strike through" marking on the schedule of property attached to the Revised Purchase Offer.  The trustee has

1 | further advised the court that the credit for the sold unit does
2 | not change the outcome of the auction or his conclusion that the
3 | Bigge bid was the highest and best offer for the debtor's assets.
4 |   24. The trustee and Bigge have addressed and resolved
5 | mutual concerns regarding the administration of the property
6 | pending the closing, scheduled to occur prior to the close of
7 | business on June 30, 2005, in the Revised Purchase Offer. In
8 | order to preserve the value of the assets, they believe it is
9 | critical that operators, repair personnel and business operations
10 | be maintained respecting the equipment presently on lease until
11 | the closing. At the June 14, 2005 hearing, in order to
12 | consummate the sale, the court continued the trustee's
13 | authorization to operate the debtor's business until July 20,
14 | 2005. However, the trustee's authorization to use cash
15 | collateral expires on June 20, 2005 and GECD has stated that it
16 | will not consent to further use of cash collateral.
17 |   25. Bigge has offered to accept financial responsibility
18 | commencing on June 20, 2005 so that the trustee may effectively
19 | administer the property, and specifically the equipment presently
20 | being leased, without using cash collateral. In order to effect
21 | this transfer of financial responsibility, the payment of union
22 | employee's of ETC, Inc., which had been funded by the debtor,
23 | will be transferred to Bigge's payroll effective June 20, 2005.
24 | The trustee will continue to employ and administer Solveson's
25 | non-union employees for the period commencing June 20, 2005 and
26 | ending upon the closing, but Bigge will advance to the trustee
27 | funds sufficient to meet payroll for such period. Bigge will
28 | also obtain parts for repairs and otherwise advance funds so that

1  the trustee may satisfy the requirements of the lessees of the

2  debtor's equipment respecting operation and maintenance of the

3  leased equipment commencing June 20, 2005.  In return, Bigge will

4  be entitled to any rental receipts attributable to the period

5  following June 20, 2005.  These issues are addressed in paragraph

6  12 of the Revised Purchase Offer.

7      26.  The trustee anticipates becoming obliged to pay other

8  critical operating expenses prior to the closing, for example,

9  liability insurance premiums.  Since the court authorized the

10 trustee to operate the business through July 20, 2005, the

11 trustee is authorized to pay those expenses; but he may not use

12 cash collateral to do so.

13     27.  The Revised Purchase Offer provides that Bigge, in its

14 sole discretion, may advance the trustee up to $100,000 so that

15 he may fund those expenses without using cash collateral, those

16 advances to be treated as a credit against the cash payable by

17 Bigge at closing.  Even if Bigge were to advance the $100,000

18 maximum, the trustee's cash at closing would nonetheless exceed

19 the estimated amount of the aggregate secured debt by more than

20 $700,000.

21     28.  At the hearing on June 14, 2005, Passy asserted an

22 entitlement to the break-up fee and certain parties advised the

23 court that they wished to oppose the break-up fee.  The court set

24 a continued hearing of July 11, 2005 with respect to the Break-Up

25 Fee, with Passy submitting supporting papers by June 24, 2005,

26 Opposition, if any, to the break-up fee due by July 1, 2005, and

27 any reply by Passy due by July 8, 2005.  Nothing contained in

28 these findings of fact or conclusions of law shall affect or

1  prejudice any right Passy may have with respect to seeking

2  payment of the break-up fee.

3      29.   To the extent that any of the following conclusions of

4  law constitute findings of fact, they are incorporated herein by

5  this reference.

6

7                          Conclusions of Law

8      1.   To the extent that any of the preceding findings of

9  fact constitute conclusions of law, they are incorporated herein

10  by this reference.

11      2.   The notice of the Sale Motion given by the trustee on

12  June 3, 2005, and the notice of the continuance of the hearing on

13  the Sale Motion given in open court on June 13, 2005, was

14  adequate.

15      3.   Under the circumstances, parties in interest have

16  received adequate notice and an opportunity to be heard.

17      4.   Every holder of a lien encumbering the property

18  received adequate notice and an opportunity to be heard

19  respecting the trustee's motion to sell the property free and

20  clear of liens.

21      5.   The moving creditors consented to a sale free and clear

22  of their liens on the terms of Bigge's purchase offer, in return

23  for payment in full of their secured claims.

24      6.   The cash portion of the purchase price under Bigge's

25  purchase offer is greater than the aggregate of all liens

26  encumbering the property.

27      7.   Every holder of a lien encumbering the property could

28  be compelled, in a legal or equitable proceeding, to accept a

                                   -11-

1  money satisfaction of its lien.

2      8.   The requirements of section 363(f) of the Bankruptcy

3  Code have been met with respect to the sale of the property free

4  and clear of liens.

5      9.   The changes to the terms of the Bigge's purchase offer

6  as contained in the Revised Purchase Offer are beneficial to

7  creditors and the estate and do not materially adversely affect

8  any creditor or party in interest.

9      10.  A sale on the terms of the Revised Purchase Offer is

10  fair, reasonable, appropriate, and in the best interests of

11  creditors and the estate.  The Revised Purchase Offer represents

12  the optimal available value for the estate's assets.

13      11.  The requirements of section 363(b) of the Bankruptcy

14  Code have been met with respect to the sale of the property on

15  the terms of the Revised Purchase Offer.

16      12.  The provisions of the Revised Purchase Offer that

17  address issues arising in the operation of the debtor's business,

18  described in Findings 23-27 are appropriate exercises of the

19  trustee's business judgment and consistent with his authority to

20  operate the debtor's business pursuant to section 721 of the

21  Bankruptcy Code.

22      13.  To the extent that the provisions of the Revised

23  Purchase Offer that address issues arising in the operation of

24  the debtor's business, described in findings 23-27, may be

25  authorized only after notice and a hearing, the court determines

26  that the notice that has already been given in connection with

27  the trustee's earlier motions to operate the debtor's business

28  and to use cash collateral and the opportunity to be heard that

1  has already occurred is adequate under the circumstances.

2       14.   Bigge is a good faith purchaser of the property.

3       15.   The stay imposed under Rule 6004(g) of the Federal

4  Rules of Bankruptcy Procedure will be waived with respect to the

5  foregoing sale.

6  Dated: 27 June 2005

7                                    By the Court

8

9

10  Michael S. McManus, Chief Judge
    United States Bankruptcy Court

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA

### CERTIFICATE OF SERVICE

   The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was served facsimile transmission to the following entities listed at Fax Number(s) shown below.


David Johnston
(209)578-5909

Abram S. Feuerstein
(209)943-0905

Michael  St. James
(415)391-7568


DATED: *28 June 2005*          By: *Beverly Door*
                                       **Deputy Clerk**